645 A.2d 924

**MERCY REGIONAL HEALTH SYSTEM (FORMERLY MERCY HOSPITAL) OF ALTOONA, Petitioner,**

**v.**

**DEPARTMENT OF HEALTH, Respondent.**

**ALTOONA HOSPITAL, Petitioner,**

**v.**

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1994.

Decided July 12, 1994.

630

**632**

Barbara Blackmond, for petitioner Mercy Regional Health System.

Seymour J. Schaffer, for petitioner Altoona Hosp.

James T. Steele, Jr., Asst. Counsel, for respondent.

William J. McCabe, for intervenor Blair Region Surgical Center.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

Mercy Regional Health System of Altoona and Altoona Hospital (collectively, Petitioners) petition for review the decision of the State Health Facility Hearing Board (Hearing Board) affirming the Department of Health's (Department) grant of a certificate of need to Blair Region Surgical Center.

■ On May 7, 1990, Blair Region Surgical Center (Blair) filed an application for a certificate of need (CON) from the Department for the establishment of a freestanding physician-owned ambulatory surgery center. Both Petitioners, individually, objected to the application and requested that a hearing be held when appropriate. Throughout this time, Martha Woglom, the planner for the Department's Division of Need Review, requested additional information from Blair in order for the application to be considered complete.[1] Upon a demand for review from Blair, the Department held a public hearing on the CON application in which both Petitioners participated.

On September 21, 1991, a hearing was held before Jack Means, the Director of the Division of Need Review acting as the hearing officer for the Department. All parties presented speakers who made an oral statement of support or objection to the application. Those statements were also submitted in writing to the hearing officer and some exhibits and documents supporting the statements were accepted into the record. At the close of the hearing, the hearing officer notified each party that it could submit questions to the other party

1. Before the review process begins, the Department is permitted to contact the applicant and request any additional information that is enumerated in the statutes or regulations. Section 702 of the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. § 448.702. However, once the review process begins and the hearing is held, Section 702(f) forbids further contact between the Department and the applicant or an objector.

through him. Following that exchange of questions and written answers, the parties submitted briefs.

As the planner for the Division of Need Review, Martha F. Woglom reviewed the application, determined that she needed additional information and contacted Blair for that information. Communications occurred both orally and by written submissions. All of the communications were summarized, if oral, and were added to the record.

Upon completing her review, the planner submitted an eight-page memo recommending that the Department approve the CON application. After the memo was reviewed by Director Means and by Donna Wenger, the Acting Deputy Secretary for Planning and Quality Assurance, the Department adopted the recommendation and issued notice of its approval of the CON for Blair's proposed surgery center.[2] Petitioners requested reconsideration from the Department, which was denied, and then filed an appeal with the Hearing Board.

Before the Hearing Board, Petitioners argued that the Department failed to give them a hearing as required by the Health Care Facilities Act (Act) and the Administrative Agency Law, the Department violated their constitutional rights to due process and equal protection, the Department engaged in *ex parte* contacts with Blair after the hearing and during the review of the application, and that the decision was not supported by substantial evidence. The Hearing Board held hearings in which Planner Woglom, Director Means and Deputy Secretary Wenger testified concerning the Department's procedures and decision-making process.[3] After the hearings,

2. The letter of approval set forth the following "findings":
 1. The project is consistent with the State Health Plan.
 2. The applicant has demonstrated that the project represents a less costly and more effective alternative to inpatient surgery, and does not inappropriately increase the total community cost of health care.
 3. The project is financially and economically feasible.

3. Before the Hearing Board, Petitioners also presented the testimony of several witnesses, about half of whom had made a statement at the hearing before the Department. Additionally, one witness testified who

the Hearing Board issued an opinion which affirmed the Department's approval of the CON by a 2-1 vote. The Hearing Board held that the Department is not required to comply with the Administrative Agency Law, and that Department procedures complied with the Act, that it could not address constitutional issues, that no *ex parte* contacts occurred because all contacts between the planner and Blair were included in the record, and that the decision was supported by substantial evidence.[4] Petitioners then filed this appeal.

Petitioners now contend (1) that the 2-1 vote by the Hearing Board was invalid because the number of members of the Hearing Board had been increased to five and a majority of members are needed to act; (2) that the Department violated the Act by engaging in *ex parte* communications with Blair after the hearing; (3) that the proceedings before the Department and the Hearing Board violated the Act, the Administrative Agency Law and their constitutional rights to due process; (4) that the Department's decision was not supported by substantial evidence; and (5) that the Department violated Mercy Hospital's equal protection rights.

I.

Petitioners initially contend that because the number of Hearing Board members had been statutorily increased to five before the Hearing Board voted on their appeal, the three voting members had to agree for the Hearing Board to act. Section 502(b) of the Act, Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S. § 448.502(b), states "[h]earings may be held before one or more members of the board, but action of the

was apparently unavailable at the time of the hearing before the Department. (Reproduced Record 1937a).

4. In the dissent to the Hearing Board's decision, Chairman Webster stated that the decision was not supported by substantial evidence because the planner gave only a cursory review to legitimate issues raised by Petitioners and did not question information given to her by Blair. Because these issues should have been considered before approval of a CON, Chairman Webster argued that the decision should not have been affirmed.

board shall be made by majority vote of the board." Effective December 18, 1992, Section 5 of Act 179 amended the Health Care Facilities Act to state that the Hearing Board "shall consist of five members." However, the two additional members had not yet been appointed at the time of the Hearing Board's order, dated February 25, 1993.

 A board is composed of those members serving and voting, not the number authorized to serve. In Section 501, the legislature specifically declared that no member could participate in a decision if he or she has an economic interest or other conflict of interest. Besides a conflict of interest, there may be many circumstances in which one or two of the active members cannot participate. For example, an extended illness may keep a member from reviewing and voting on appeals. Moreover, a member may resign and the position remains vacant until another member is appointed. In such situations, all appeals to the Hearing Board need not be accumulated and detained until that member is able to continue in his or her position or a new member is appointed.[5]

 Just as with other boards, absent specific legislation to the contrary, if there is a quorum, the board may act. *See DiGiacinto v. Allentown*, 486 Pa. 436, 406 A.2d 520 (1979). Because only three members were, in fact, present and eligible to participate in the decision of the Hearing Board due to the fact that the new members had not yet been appointed, a majority vote of that number, or two, was sufficient to affirm the Department.

## II.

Petitioners' second contention is that the Department violated the Act by engaging in *ex parte* communications with Blair

5. If we were to agree with Petitioners' contention, it would have a detrimental effect on this Hearing Board and on other boards and commissions with similar language in their authorizing legislation by requiring a majority of members authorized to serve to agree regardless of how many members are actually serving at the time the decision is made. *See, e.g.,* Environmental Hearing Board, 25 Pa.Code § 21.86(a), or Horse Racing Commission, 58 Pa.Code § 165.209.

after the hearing. Petitioners argue that Planner Woglom solicited information from Blair and Blair provided both oral and written information pertaining to their application without any opportunity given to the opposing parties to participate. Petitioners argue that this contact was *ex parte* communication in violation of the Act because they were never notified of contacts and, therefore, had no real opportunity to learn of them even though they were in the Department's record.[6]

Section 702(f)(2) of the Act, 35 P.S. § 448.702(f)(2), provides:

All decisions of the Department shall be based solely on the record. No ex parte contact regarding the application between *any employee of the department* who exercises responsibilities respecting the application and the applicant, any person acting on behalf of the applicant or any person opposed to the issuance of the certificate of need shall occur after the commencement of a hearing on the application and before a decision is made by the department. (Emphasis added).

■ *Ex parte* is defined as "on one side only; by or for one party.... A judicial proceeding, order, injunction, etc. is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to or contestation by, any person adversely interested." Black's Law Dictionary 517 (5th Ed). Due process requires that administrative decisions of an adjudicatory nature must be based exclusively on evidence contained in the formal record which has been made known to the parties and which they have had an opportunity to refute. 36 Standard Pennsylvania Practice 2d § 166:167; *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613, 617 (1982) (information critical to the judgment of the agency cannot be insulated from refutation by the opposing party).[7]

---

6. Petitioners also argue that the contacts were unfair in light of Director Means' direction at the end of the hearing that any correspondence sent to the Department should also be directed to the other parties. (R.R. 599a, 609a).

7. Although the General Rules of Administrative Procedure are not effective where there are inconsistent statutory or regulatory proce-

The Department and Blair do not contest that the contacts with Planner Woglom, who wrote the recommendation to approve the CON, took place. However, they contend that the contacts were not *ex parte* because they were included in the Department's official file in compliance with its regulations and that Petitioners could have read them as part of the official record made available to any affected person. The Department relies on its regulation at 28 Pa.Code § 401.5(g)(6):

Decisions of the Department will be based solely on the record. There shall be no ex parte contacts.

(i) For purposes of this section, an ex parte contact is a contact between an applicant for a certificate of need, any person acting on behalf of the applicant, or any person opposed to the issuance of a certificate, and any person in the Department who exercises any responsibility respecting the application after the commencement of the public hearing on the application and before a decision is made with respect to it.... A contact which is recorded as part of the official application file in accordance with paragraphs (ii) and (iv) shall not be considered an ex parte contact.

. . . . .

(ii) When the Department receives a written communication from a person who supports or opposes the granting of a certificate of need, the communication shall be made a part of the official project file regarding the issuance of the certificate of need. Any person may review the official project file during the normal business hours of the Department. Any affected person may receive a copy of written communications which have been made a part of the official project file by contacting the Division of Need Review....

dures, the description of *ex parte* is revealing: "no presiding officer shall, in a proceeding which the agency head has directed be conducted ... consult a person or party on a fact in issue unless upon notice and opportunity for participants to participate." 1 Pa.Code § 35.188(b). This definition of *ex parte* is consistent with that in the federal Administrative Procedure Act, 5 U.S.C. 551(4).

The regulation attempts to define *ex parte* to include only those contacts which are not subsequently made part of the record regardless of whether or not opposing parties had notice or an opportunity to refute the evidence. The meaning of *ex parte* in the statute must be construed by the "common and approved usage". The common and approved usage of "*ex parte*" is communications between the decision-maker and one party outside of the record and where the other party does not have notice or the opportunity to contest. The Department attempted to narrow the statutory prohibition by enacting a regulation that is in conflict with the common meaning of *ex parte*. An administrative agency's regulations cannot conflict with the statutory intention; the statute is always controlling. *Lancaster Laboratories, Inc. v. Commonwealth*, 134 Pa.Commonwealth Ct. 59, 66, 578 A.2d 988, 992 (1990); *Tiani v. Commonwealth of Pennsylvania, Department of Public Welfare*, 86 Pa.Commonwealth Ct. 640, 486 A.2d 1016 (1985). Therefore, the regulation cannot permit communications between Planner Woglom, the Department employee responsible for making a recommendation on the approval of the CON, and Blair, so long as they are included in the official file because this inclusion, although open to affected parties, does not give notice to those persons and an opportunity to refute the evidence to Petitioners, as participants in the hearing process.[8]

Our decision is supported by our prior opinion in *Commonwealth, Department of Health v. Rehab Hospital Services Corp.*, 127 Pa.Commonwealth Ct. 185, 197, 561 A.2d 342, 347 (1989), *petition for allowance of appeal denied*, 525 Pa. 607, 575 A.2d 571 (1990). In that case, we held that the Depart-

---

8. Petitioners assert that the regulation may be construed so as not to conflict with the statute if the words "persons who support or oppose the granting of a certificate of need" in 28 Pa.Code § 401.5(g)(6)(ii) is construed to mean persons other than those listed in subsection (i), that is, the applicant, someone acting on behalf of the applicant or "persons opposed to the issuance of a certificate". The Department disagrees with such an interpretation. Because the language used in both subsections is similar and because the language in subsection (ii) is unambiguously broad, we cannot construe the regulation in such a way to be lawful.

ment held prohibitive *ex parte* communications when it did not notify Rehab Hospital, which had been granted party status as an objector to an application for a CON, of settlement negotiations between it and the applicant. Just as in this case, we interpreted Section 702(f)(2) of the Act to prohibit communications where one party is excluded from participating, not just those communications which are not on the record. We stated that the Department's actions violated Rehab's due process rights by denying notice and an opportunity to be heard. *Id.* 127 Pa.Cmwlth. at 196 n. 8, 561 A.2d at 347 n. 8.[9]

■ Accordingly, the Department's decision was improper due to impermissible *ex parte* communications between the applicant and the Department after the hearing and before the decision was rendered and we must vacate and remand for a new Department decision. Because we are remanding, it is necessary that we consider Petitioners' contention that the procedures before the Department and the Hearing Board violated due process so that proper proceedings will be afforded on remand.

## III.

Petitioners contend that the proceedings before the Department and the Hearing Board violated the Act, the Administrative Agency Law and their constitutional rights to due process. Specifically, they contend that the Department failed to give them a sufficient hearing as required under the Administrative Agency Law (AAL) and the Act because they were unable to cross-examine the persons making statements for Blair.

## A.

The Hearing Board held and the Department contends that Petitioners were afforded all the procedural requirements

9. Our decision is also supported by the Administrative Procedure Act, 5 U.S.C. § 557(d), while providing that communications may be summarized and placed in the record, it also requires that there be adequate notice of communications between the agency and interested parties and an opportunity to comment.

under the Act and that the AAL is inapplicable to hearings before the Department. The Department suggests that because Section 703(b) of the Act, 35 P.S. § 448.703(b), which sets forth the procedures to be followed at public hearings before the Department, does not refer to the AAL, the AAL is irrelevant.

The operative sections of the AAL apply to "adjudications" of Commonwealth agencies, for example, 2 Pa.C.S. § 504, relied on by Petitioners, states "[N]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." An adjudication, as defined in 2 Pa.C.S. § 101, is "a final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." Although on its face, the Department's decision to grant a CON may be considered an adjudication because it affects the property rights and obligations of the parties and is a "final" decision from the Department, we must be mindful of the explicit procedures in the Act that Department decisions on an application for a CON if appealed must be taken to the Hearing Board. Section 502(a)(1) of the Act, 35 P.S. § 448.502(a)(1). In contrast, the AAL mandates that an aggrieved person (who has a direct interest in the adjudication) has the right to appeal the adjudication of a Commonwealth agency[10] to a *court*. 2 Pa.C.S. § 702. Because the Act requires that the Department's decision be appealed to the Hearing Board, that decision is not definable as an "adjudication" for the purpose of imposing the requirements of the AAL on the hearing provided at the Department.[11]

10. The Department is a "Commonwealth agency" because it is an executive agency which includes "the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government." 2 Pa.C.S. § 101.

11. Even if the AAL applied to the Department decision, the procedures provided in the AAL would only be invoked in the event that the procedures provided in the Act were deficient. The AAL is a general scheme that guarantees certain due process rights which must be

We realize that in *Southern Chester County Medical Center v. Commonwealth, Department of Health,* 90 Pa.Commonwealth Ct. 284, 288, 494 A.2d 885 (1985), we held that the Department's determination that a proposed project is nonreviewable, that is, a CON is not required, is an adjudication as defined by the AAL. However, that decision was based on the limited powers of the Hearing Board under the Act at that time. Section 502 provided that the Hearing Board should hear appeals from Department decisions on the applications for CON and from Department decisions that a CON was required but did not grant the Hearing Board the power to hear a Department decision that a CON was not required.[12] Because there was no review by the Hearing Board provided in the Act, there was no obstacle to holding that the Department's decision was an "adjudication", that is, the final order subject to the procedures provided in the AAL and appealable to this court. *Id.* at 288, 494 A.2d at 887.

 As argued by the Department, the Act provides specific detailed procedures for hearings before the Department. The parties disagree about whether the procedures utilized complied with those directed by the Act. Section 703(b) of the Act, 35 P.S. § 448.703(b), which is made applicable to Department hearings under Section 704(a) of the Act, provides:

> Affected persons may request a public hearing. . . . In the hearing, any person shall have the right to be represented by counsel and to present oral or written arguments and relevant evidence. Any person directly affected may conduct reasonable questioning of persons who make relevant factual allegations. A record of the hearing shall be main-

provided to a party whose personal or property rights are adjudicated by a Commonwealth agency. If a particular statute does not provide for due process rights in accordance with the AAL, then the AAL requires the agency to meet its due process guarantees. Nothing prohibits an agency from implementing a process more protective of due process rights because the AAL only serves as a baseline.

12. Section 502 was subsequently amended to provide for a hearing before the Hearing Board on Department decisions of nonreviewability.

tained.[13]

*See also* 28 Pa.Code § 401.5(e)(5)(i) (applicable to Department hearings pursuant to § 401.5(g)(2)). After the hearing and within 90 days from the beginning of the review (unless the period is extended by the applicant), the Department must make written findings which state the basis for the final decision and are based solely on the record. Section 702(f) of the Act, 35 P.S. § 448.702(f).

Petitioners argue that these procedures were not actually afforded the parties because they were not allowed reasonable examination at the public hearing. The transcript of the hearing before Director Means reveals that both Petitioners and Blair presented short statements by several persons of their choice supporting their position. These presentations contained both testimony and argument concerning the CON application. After these oral statements, a written copy of the statements was submitted to the Department. Written questions were also submitted to the Department and forwarded to the opposing party. It appears from the record that the parties exchanged answers to the questions presented. These procedures meet the requirements of the Act that relevant evidence and argument may be given at the Department's hearing and that "reasonable questioning" is allowed.

**13.** Under amendments to the Act, although inapplicable to this case because they were not enacted until December 18, 1992, Section 703(b) no longer applies to Department proceedings, and instead, Section 704 provides for a "public meeting" instead of a "hearing", which may be requested by an "interested" rather than an "affected" person:

> Interested persons may request a public meeting within 15 days of publication [of the beginning of review], and the department shall hold such a meeting.... In the meeting, the applicant and any interested person providing prior notice to the department shall have the right to present oral or written comments and relevant evidence on the application in the manner prescribed by the department. The department shall prepare a transcript of the oral testimony presented at the meeting. Meetings shall be held in accordance with the guidelines and procedures established by the department and published in the Pennsylvania Code as a statement of policy....

Section 704 of the Act, *as amended,* 35 P.S. § 448.704.

## B.

■ Once the Department has granted or denied the application for a CON, the decision is appealable to the Hearing Board. Section 502 of the Act, 35 P.S. § 448.502. By statute, the hearing before the Hearing Board must be an adjudication in accordance with the AAL. Section 505 of the Act, 35 P.S. § 448.505, provides:

> (a) All hearings before the hearing board shall be subject to the right of notice, hearing and adjudication in accordance with 2 Pa.C.S. Chaps. 5 and 7, known as the Administrative Agency Law....

Because the Hearing Board is required to comply with the AAL and issue an adjudication, it must follow 2 Pa.C.S. § 505 which states that "all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." The Hearing Board allowed testimony to be given by Petitioners including not only testimony on the procedure utilized before the Department, but also on the substantive issues. The Hearing Board also wrote "findings of fact" and "conclusions of law" which were largely a summary of the prior proceedings and of the evidence presented and statements that there was substantial evidence to support each of the Department's findings. The Hearing Board referred to their standard of review, as stated in 37 Pa.Code § 197.45(a):

> (1) Whether the decision of the Department is supported by substantial evidence. (2) Whether there was a violation of constitutional or statutory law or the regulations of the Department. (3) Whether there was any prejudicial procedural error committed during the review.[14]

The Hearing Board's directive by the Act is to give notice, hear the case and issue an adjudication in compliance with the AAL which requires that reasonable examination and cross-

---

**14.** 37 Pa.Code § 197.45(a) is a regulation promulgated by the Hearing Board. Additionally, the Department promulgated 28 Pa.Code § 401.5(j)(1), which provides that the issues raised to the Hearing Board are "restricted to whether the findings and recommendations of the Department are supported by substantial evidence."

examination be allowed. In light of this statutory requirement to be the forum for conflicting evidence, the Hearing Board must also be the forum required to make findings of fact, including credibility determinations that resolve conflicts in the evidence, not simply recite the evidence given. Furthermore, after making findings of fact on conflicting evidence, a review of the Department's findings and recommendations for "substantial evidence" is incongruous. We agree with a prior opinion of this court that "[A] more unorthodox, complicated and convoluted appeal process is not imaginable." *IFIDA Health Care Group Ltd. v. Department of Health,* 128 Pa.Commonwealth Ct. 634, 564 A.2d 535, 539 (1989).

▮▮▮▮▮ An administrative agency may not promulgate regulations contrary to the legislative intent expressed in the statute. *Mitchell v. Travelers Insurance Company,* 522 Pa. 545, 555, 564 A.2d 1232, 1237 (1989); *Lancaster Laboratories.* Because of the statutory mandate to provide a hearing in compliance with the AAL, the Hearing Board's scope of review as stated in the regulations is inappropriate and we must strike the regulations as conflicting with the Act.[15] The Hearing Board is required to make its own findings of fact and then make conclusions of law based on its findings. This determination does not in any way contradict the requirements of the Act that the Hearing Board give due deference to the Department's expertise or limits it review to issues raised at the Department. Section 506 of the Act, 35 P.S. § 448.506.

**15.** This court has relied on the regulation we now strike down as conflicting with the enabling legislation in prior cases. *See, e.g., Morrisons Cove Home v. Department of Health,* 140 Pa.Commonwealth Ct. 469, 477 n. 8, 593 A.2d 925, 929 n. 8 (1991), *petition for allowance of appeal denied,* 529 Pa. 653, 602 A.2d 863 (1992); *Department of Health v. Brownsville Golden Age Nursing Home, Inc.,* 103 Pa.Commonwealth Ct. 449, 455–56, 520 A.2d 926, 929 (1987), *petition for allowance of appeal denied,* 515 Pa. 610, 529 A.2d 1083 (1987); *Rehabilitation Hospital Services Corporation v. Health Systems Agency of Southwestern Pennsylvania,* 82 Pa.Commonwealth Ct. 147, 475 A.2d 883 (1984). Although these cases relied on the Hearing Board's stated scope of review (and in *Morrisons Cove,* determined that the Department was the factfinder reviewed by this court), we believe the issue of a conflict with the statute was not raised in those cases.

Because the Hearing Board applied an improper scope of review, even if *ex parte* communications had not occurred, we would vacate the decision. The case is remanded to the Hearing Board so that it can be remanded to allow the Petitioners to refute any evidence submitted *ex parte*. After the Department's decision, the Hearing Board must make an adjudication with findings of fact that resolve conflicts in the evidence and conclusions of law deciding the case rather than reviewing the Department's decision.[16]

## *ORDER*

AND NOW, this 12th day of July, 1994, the order of the State Health Facility Hearing Board dated February 25, 1993, is vacated and remanded for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

---

**16.** Because we must remand, we need not address Petitioners' remaining contentions.