David **TESSITOR**, Petitioner,

v.

**PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES and Port Authority of Allegheny County, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted June 12, 1996.
Decided Sept. 12, 1996.

---

Lee R. Golden, Pittsburgh, for Petitioner.

Charney Regenstein, Assistant Counsel, for Respondent, Department of Environmental Resources.

Steven F. Faeth, Pittsburgh, for Respondent, Port Authority of Allegheny County.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

McGINLEY, Judge.

David Tessitor (Tessitor) petitions for review of an order of the Environmental Hearing Board (Board) which dismissed his appeal from the grant of a permit to the Port Authority of Allegheny County (PAT) by the Department of Environmental Protection, formerly the Department of Environmental Resources (Department).

The Department issued a water obstruction and encroachment permit authorizing PAT to rehabilitate, maintain and remove existing structures and construct and maintain new bridges across Chartiers Creek and the Monongahela River as well as construct interchange ramps in the floodplain of Chartiers Creek in the City of Pittsburgh, Pennsylvania. The special conditions of the permit specifically provided for compliance with all applicable state water quality standards.

Tessitor and Ed L. Stewart (Stewart) appealed to the Board contending that the grant of the water obstruction and encroachment permit will increase transit emissions resulting in a decline of the environmental quality surrounding their community. Tessitor asserted that he will be adversely affected by the environmental degradation as "a resident of Allegheny County and a user of public transportation" whereas, Stewart, as-

serted that he will be adversely affected as "a resident of Crafton, Allegheny County, a community adversely affected by the approval of the permit in question." Notice of Appeal, Filed December 30, 1994, at 1; Reproduced Record (R.R.) at 2a.[1]

In response, the Department filed a motion to dismiss, asserting that the two appellants lacked standing to challenge the issuance of the permit because they did not express "any interest in the Department's action which would exceed the interest of the general public in ensuring compliance with environmental laws." Motion to Dismiss for Lack of Jurisdiction, Filed March 20, 1995, (Motion) at 4, Paragraph No. 13; R.R. at 8a. The Department also asserted that the appellants "made no factual allegations that establish a causal connection between the Department's issuance of a Water Obstruction and Encroachment Permit and degradation of air quality...." Motion at 5, Paragraph No. 20; R.R. at 9a. The Department added that "the permit issued by the Department does not authorize air emissions...." Memorandum of Law in Support of Motion to Dismiss, Filed March 20, 1995, at 6; R.R. at 18a.

Tessitor argued that he "uses the streams and property affected as a hiker, bird watcher, fisherman and outdoorsman." Appellant's Response to Motion to Dismiss, Filed April 12, 1995, Paragraph No. 13 at 1; R.R. at 19a. Tessitor argued further that the construction authorized by the permit "would increase transit emissions" and that "[t]he direct link between the permit issuance and the air quality degradation is that the permit would allow the building of the busway and the subsequent air degradation." Id. at 2; R.R. at 20a. With only two of five Board member positions filled at the time of the Board's opinion and order dated May 4, 1995, the two Board members granted the Department's motion determining that the appellants failed to allege or establish a close causal connection between the activities sanctioned under the water encroachment permit and the alleged harm to the environment.

■ On appeal to this Court, Tessitor contends that the Board's decision is invalid because the Board did not have enough members to constitute a quorum. Tessitor also contends that he had standing to challenge the Department's action. Our scope of review of Board decisions is limited to determining whether the Board committed any errors of law or constitutional violations, or whether its necessary findings of fact are supported by substantial evidence. *T.R.A.S.H., Ltd. v. Department of Environmental Resources*, 132 Pa.Cmwlth. 652, 574 A.2d 721, *petition for allowance of appeal denied*, 527 Pa. 659, 593 A.2d 429 (1990).

Initially, Tessitor contends that a Board whose membership is so depleted that it is less than a quorum of its authorized members cannot act. This Court addressed a similar issue in *Mercy Regional Health System v. Department of Health*, 165 Pa. Cmwlth. 629, 645 A.2d 924 (1994), where petitioners alleged that a two to one vote by the members of State Health Facility Hearing Board granting a certificate of need was invalid. The petitioners argued that three votes were required to grant the certificate because a majority vote of the members was necessary and the number of authorized members had been increased to five.[2] Even though the number of members was statutorily increased, no one had been appointed at the time of the vote on February 25, 1993. We made the following observations:

A board is composed of those members serving and voting, not the number authorized to serve.... [T]he legislature specifically declared that no member could participate in a decision if he or she has an economic interest or other conflict of interest. Besides a conflict of interest, there may be many circumstances in which one or two of the active members cannot participate. For example, an extended illness may keep a member from reviewing and voting on appeals. Moreover, a member may resign and the position remains va-

---

1. By order dated January 26, 1996, this Court granted the motion to discontinue appeal filed by Ed L. Stewart.

2. The Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101—448.904, was amended effective December 18, 1992, increasing the number of members of the Board from three to five.

cant until another member is appointed. In such situations, all appeals to the Hearing Board need not be accumulated and detained until that member is able to continue in his or her position or a new member is appointed.[5]

---

[5] If we were to agree with Petitioners' contention, it would have a detrimental effect on this Hearing Board and on other boards and commissions with similar language in their authorizing legislation by requiring a majority of members authorized to serve to agree regardless of how many members are actually serving at the time the decision is made. *See, e.g.,* Environmental Hearing Board 25 Pa.Code § 21.86(a), or Horse Racing Commission, 58 Pa.Code § 165.209.

*Id.* at 927–928.

Citing *DiGiacinto v. City of Allentown,* 486 Pa. 436, 406 A.2d 520 (1979), we noted that where there is no language to the contrary in the relevant statutes or regulations the courts apply the common law rule that a majority of those voting in the presence of a quorum[3] can act for a body as a whole. We determined that no specific number of members was required by legislation and held that a majority vote of three members was sufficient for the State Health Facility Hearing Board to act as a quorum because only three members were eligible to participate in the decision.

 In the present controversy, there is no dispute that there were only two Board members at the time of the decision despite the requirement of Section 3(b) of the Environmental Hearing Board Act (Act), Act of July 13, 1988, P.L. 530, *as amended,* 35 P.S. § 7513(b), that "[t]he board shall consist of five members." Neither the enabling statute nor any regulation enacted thereunder sets forth a minimum number of members required for the Board to act. We see no reason why a gubernatorial or legislative lag in appointing or approving Board members should delay the Department's swift disposition of disputes within its jurisdiction. The two eligible members were, in fact, present and participated in the decision and because of the vacancies, under the common law rule,

a majority vote of that number was valid. Here, two votes constituted a majority.

 We now turn our attention to whether Tessitor had standing to challenge the grant of the water encroachment permit by the Department to PAT. To have standing to initiate a legal action, a party must have a direct and immediate interest in the subject matter of the litigation. *South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 555 A.2d 793 (1989). The interest must have substance beyond the abstract interest of all citizens in having others comply with the law. *In Re Francis Edward McGillick Foundation,* 537 Pa. 194, 642 A.2d 467 (1994). An interest is immediate rather than remote only where a party proves a sufficiently close causal connection between the challenged action and the asserted injury. *Empire Coal Mining & Development, Inc. v. Department of Environmental Resources,* 154 Pa. Cmwlth. 296, 623 A.2d 897 (1993).

 In the present matter, the Board determined that Tessitor failed to allege facts to support his assertion that he will suffer direct harm as a result of the issuance of the permit. Tessitor's sole allegation that there is a causal connection between the permit and his potential injury is that the construction authorized by the permit will result in an increase in transit emissions and an ensuing decline in the air quality surrounding the community. To accept that Tessitor has standing means that an individual need only generally allege that an increase in transit emissions will cause a decline in the air quality in the surrounding community. Tessitor has not alleged any specific harm or causal relation between the issuance of the permit and any air quality degradation. To accept Tessitor's syllogism means that he has standing to challenge the issuance of any permit if it involves an emission in his community. According to Tessitor's own allegation, the permit causes no *direct* harm to his interests; the connection between his concerns and the issuance of the water encroachment permit is too remote and speculative. He has not alleged the necessary close causal connection

---

**3.** A quorum is defined as a "majority of the entire body" or "a majority of those entitled to

act." *Black's Law Dictionary* 1255–1256 (6th ed.1990).

between the water encroachment permit and any harm to his interests.

█ Additionally, Tessitor has not specified which streams and property he deems environmentally endangered nor has he precisely defined the area where he conducts his activities, or the area that he maintains is his community. His stake as an outdoorsman does not rise to a level beyond the abstract interest of all citizens in having the Department comply with environmental regulations.

Tessitor failed to allege a substantial, direct and immediate interest in the water encroachment permit issued to PAT and lacked standing to challenge the permit. We affirm.

### ORDER

AND NOW, this 12th day of September, 1996, the order of the Environmental Hearing Board in the above-captioned matter is affirmed.

LEADBETTER, J., concurs in the result only.

FLAHERTY, Judge, concurring and dissenting.

I agree with the majority that the petitioner now remaining on the record does not have standing. However, I respectfully dissent with the majority opinion on the definition of a quorum. In this case, the Environmental Hearing Board (Board) clearly lacked authority to issue a decision in the absence of a quorum.

At the time of the Board's decision, the Board consisted of only two members. Section 3(b) of the Environmental Hearing Board Act (Act)[1] provides that "[t]he board shall consist of five members." The members are appointed by the Governor with the consent of the majority of the Senate. Neither the enabling statute nor any regulation thereunder sets forth the minimum number of members required for the Board to act. In the absence of such language, the courts apply the common law rule that "a majority of those voting in the presence of a quorum

can act for a board or other body." *Commonwealth ex rel. Bagnoni v. Klemm*, 499 Pa. 566, 569, 454 A.2d 531, 532 (1982). Thus, in cases such as this one, it must first be determined whether a quorum is present.

As stated by the majority, a quorum is defined as a "majority of the *entire body*," or a "majority of *those entitled to act*." *Black's Law Dictionary*, 1255–1256 (6th ed.1990) (emphasis added). In this case, because the entire Board is comprised of five members who are entitled to act, a quorum, by definition, necessitates the presence of a majority of those members, i.e., three. In the absence of a quorum, as occurred in this case, the Board is without authority to act.

In *Mercy Regional Health System v. Department of Health*, 165 Pa.Cmwlth. 629, 645 A.2d 924 (1994), cited by the majority, petitioners challenged the validity of a two-to-one vote of the State Health Facility Hearing Board (Health Board). Petitioners maintained that, because the number of Health Board members had been statutorily increased from three to five before it voted on their appeal, all three voting members had to agree for the Health Board to act.

This court observed that Section 502(b) of the Health Care Facilities Act,[2] provided that hearings could be held before one or more members "but action of the board shall be by majority vote of the board." The court then stated that the "board is composed of those members serving and voting, not the number authorized to serve." *Id.* 645 A.2d at 927. Thus, *Mercy* stands for the proposition that, when determining whether a majority vote of the board exists, we must count the votes of those members who voted, not the number who could have voted if all vacancies were filled.

The issue before the court in *Mercy* was not whether a quorum was present but whether a majority of the Health Board voted in the affirmative. Indeed, a quorum was present in *Mercy*, as three of the five members were present and voted. Moreover, the court reiterated the common law rule that "if

---

1. Act of July 13, 1988, P.L. 530, *as amended*, 35 P.S. § 7513(b).

2. Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. § 448.502(b).

there is a quorum, the board may act." *Id.* at 928, citing *DiGiacinto v. City of Allentown*, 486 Pa. 436, 406 A.2d 520 (1979).

If, as the majority maintains, a quorum consists of a majority of active members who are in attendance, a quorum theoretically may consist of one, even though four vacancies remain on the board. In this fashion, if there is only one active board member, his or her presence would alone constitute a quorum and the single vote cast by that member would constitute a majority. So long as the actions taken by a sole member or, in this case, only two members, are viewed favorably by the appointing authorities, there exists little incentive to overcome whatever political problems exist and fill the remaining vacancies.

Accordingly, because the Board in this case purported to act in the absence of a quorum, I would vacate the decision and remand the case to the Board with instructions that the Board conduct its business in the presence of a quorum, i.e., no less than three of its members.