**WILLIAM PENN SCHOOL DISTRICT, Petitioner**

v.

**DEPARTMENT OF EDUCATION, DIVISION OF FOOD AND NUTRITION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2006.

Decided June 27, 2006.

---

Francis J. Catania, Media, for petitioner.

Robert M. Tomaine, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The William Penn School District (School District) petitions for review of a Hearing Officer's decision upholding the request of the Department of Education, Division of Food and Nutrition (Department) to recover school lunch funds alleged to have been overpaid to the School District. The issues included are whether the Department's claim for recovery is supported by substantial evidence; whether the Department made a timely request for the recovery; and whether the School District was deprived of its due process rights because the Hearing Officer was neither properly appointed nor sufficiently independent.

I

The School District is a "school food authority" responsible for the administration of schools participating in the National School Lunch Program (Program) under the National School Lunch Act (Act), 42 U.S.C. §§ 1751—1770, and corresponding regulations of the United States Depart-

ment of Agriculture. *See* 7 C.F.R. § 210.2. Approximately 60 to 65 percent of the School District's 5600 students receive free or reduced-price lunches under the Program, and it is reimbursed $110,000 to $140,000 per month in federal cash assistance through the Department, a state agency administering the Program in Pennsylvania.

The state agency is required to conduct an administrative review, which is defined as "the initial comprehensive on-site evaluation of all school food authorities participating in the Program" and is "used to reflect a review of both critical and general areas...."[1] 7 C.F.R. § 210.18(b)(1). School food authorities found to have a critical area violation in excess of one of the review thresholds are subject to follow-up reviews on which the state agency is required to determine, at a minimum, whether the school food authority has satisfactorily completed corrective actions within the established timeframes. 7 C.F.R. § 210.18(h). The state agency must "hold an exit conference at the close of the administrative review and of any subsequent follow-up review to discuss the violations observed, the extent of the violations and a preliminary assessment of the actions needed to correct the violations." 7 C.F.R. § 210.18(j). If the state agency determines that corrective actions have not been satisfactorily completed, the state agency must require the school food authority to resolve the problems and to submit documented corrective actions. 7 C.F.R. § 210.18(i)(5)(i).

The Department conducted three reviews of the School District's Program, including two follow-up reviews in November/December 2003 and in April 2004, and issued Documented Corrective Action reports identifying critical and general area violations, including documentation errors, overt identification of free and reduced-price lunch students, meal counting errors and incomplete meals counted toward reimbursement. The follow-up reviews concluded with exit conferences attended by the School District's food service directors and business manager. The School District thereafter provided its "Corrective Action" plan.

In a letter dated December 3, 2004, the Division's field services supervisor, Joyce Soroka, notified the School District that the Division found problems during the follow-up reviews, which affected the amount of the School District's entitlement to reimbursement, and that the Department is required to recover improperly paid funds exceeding $600. Soroka attached "Attachment A—Fiscal Action Exceeds $600 William Penn SD CRE," setting forth discrepancies of $18,594.23 found during the first and second follow-up reviews.[2] Soroka also attached the

---

1. "Critical areas" consist of the following two performance standards:

 (1) Performance Standard 1 (All free, reduced price and paid lunches claimed for reimbursement are served only to children eligible for free, reduced price and paid lunches, respectively; and are counted, recorded, consolidated and reported through a system which consistently yields correct claims.)

 ....

 (2) Performance Standard 2 (Lunches claimed for reimbursement within the school food authority contain meal elements (food items/components, menu items or other items, as applicable) as required under § 210.10.

7 C.F.R. § 210.18(g)(1) and (2). *"General areas"* includes free and reduced price process, maintenance of the verification records required by regulations and a determination that the lunch count system does not overtly identify children eligible for free and reduced price lunches. *See* 7 C.F.R. § 210.18(h).

2. Soroka listed the following discrepancy amounts in Attachment A:

Documented Corrective Action reports prepared by the field advisor, Kristin Santangelo, who conducted the reviews. Soroka requested the School District to send checks for $18,594.23 to the Department within fifteen days.

After a hearing on the School District's appeal, the Hearing Officer rejected the School District's claim that it was deprived of due process because the Hearing Officer was not duly appointed and was not an independent and impartial review official. The Hearing Officer upheld the Department's request for recovery of overpaid funds, concluding that it was not required to notify the School District of a potential fiscal action at the exit conferences or to communicate the inaccurate claim and the amount of overpayment to the School District; that the Documented Corrective Action reports informed the School District that fiscal action may be taken; that the Department's request was not untimely as 7 C.F.R. § 210.8(b)(4), which allows a state

agency to adjust the claim for reimbursement filed by a school food authority within 90 days of the last day of the claim month, does not apply to recovery of funds; and that the evidence supports the amount of recovery claimed.

## II

 The School District argues before this Court that the Department failed to present substantial evidence to support the amount of recovery of funds that it claimed. The School District notes that the Department's Exhibit 2 was prepared by Soroka, who did not participate in the reviews or testify as to how the amounts were calculated, and that Santangelo would not attest to Exhibit 2.[3]

Fiscal action taken by the Department against the School District is governed by 7 C.F.R. § 210.19(c)(2)(i), which provides:

The State agency shall identify the school food authority's correct entitle-

| Discrepancies found during the first follow-up review | |
| --- | --- |
| School Lunch | |
| Certification & Benefits Issuance Errors | $ 716.34 |
| Counting System Problems | $ 4,558.66 |
| Consolidation/Math Errors | $ 8,472.40 |
| School Breakfast-Needy | |
| Certification & Benefit Issuance Errors | $ 41.14 |
| Meal Pattern Violations | $ 1,390.66 |
| Consolidation/Math Errors | $ 365.91 |
| **Total Disallowance** | **$ 15,545.11** |

| Discrepancies found during the second follow-up review | |
| --- | --- |
| School Lunch | |
| Meal Pattern Violations | $ 57.83 |
| Counting System Problems | $ 10.50 |
| Consolidation/Math Errors | $ 2,862.46 |
| School Breakfast-Needy | $ 118.33 |
| **Total Disallowance** | **$ 3,049.12** |

3. In an appeal from a state agency's adjudication, the Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Shapiro v. State Board of Accountancy*, 856 A.2d 864 (Pa.Cmwlth.2004), *cert. denied,* —— U.S. ——, 126 S.Ct. 376, 163 L.Ed.2d 163 (2005).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Rex v. Workers' Compensation Appeal Board (City of Oil City)*, 879 A.2d 854 (Pa.Cmwlth.2005), *appeal denied,* —— Pa. ——, 897 A.2d 462 (2006).

ment and take fiscal action when any school food authority claims or receives more Federal funds than earned.... In order to take fiscal action, the State agency shall identify accurate counts of reimbursable lunches through available data, if possible. In the absence of reliable data, the State agency shall reconstruct the lunch accounts in accordance with procedures established by FNS [the Food and Nutrition Service, United States Department of Agriculture]. Such procedures will be based on the best available information including, participation factors for the review period, data from similar schools in the school food authority, etc.

The state agency must also "provide the school food authority a written notice which details the grounds on which the denial of all or a part of the Claim for Reimbursement or withholding payment is based." 7 C.F.R. § 210.18(j). In an appeal of a state agency's findings, the review official must "make a determination based on information provided by the State agency and the appellant, and on Program regulations..." 7 C.F.R. § 210.18(q)(6). *See also Mercy Regional Health Sys. (formerly Mercy Hosp.) of Altoona v. Department of Health*, 165 Pa. Cmwlth. 629, 638, 645 A.2d 924, 928 (1994) (stating that "[d]ue process requires that administrative decisions of an adjudicatory nature must be based exclusively on evidence contained in the formal record which has been made known to the parties and which they have had an opportunity to refute").

Soroka prepared the Department's Exhibit 2, which consisted of the December 3, 2004 letter and the two-page document itemizing the $18,594.23 recovery amount, but Soroka did not participate in the review process. The Documented Corrective Action forms (Department's Exhibits 3

and 4) only listed the problems cited and corrective actions to be taken by the School District and advised the School District that fiscal action might be taken. The documents identified neither the amount of the School District's correct entitlement nor the amount actually paid by the Department, as required by 7 C.F.R. § 210.19(c)(2)(i). Moreover, Soroka did not explain how she calculated the amount of recovery.

█ Santangelo testified that she discussed the problems found during her reviews with the School District's business administrator at each exit conference and that Soroka prepared Attachment A to the December 3, 2004 letter containing her calculation of the recovery amount based on the information that Santangelo provided. The following exchange took place during Santangelo's testimony:

Q. Okay. Could you show me on either PDE 3 or PDE 4 where any of the numbers that are attached to PDE 2 are set forth?

A. No, I can't.

Q. And why is that?

A. Because the numbers are determined from multiplying based on the reimbursement of free and reduced and paid meals. I don't have that in this—in PDE 3 or 4.

Q. Okay. Let's go back to the two page attachment on PDE 2. Do you know when that was prepared by Ms. Soroka?

A. No, I don't.

Q. Would it be fair to say that it was prepared before December 3, 2004?

A. I am not going to attest to what someone else prepared.

March 21, 2005 Hearing, N.T., p. 72.[4] The record reveals no other evidence to support the discrepancy recovery amount claimed by the Department. The Court therefore concludes that the Hearing Officer's decision upholding the Department's request to recover $18,594.23 is not supported by substantial evidence of record.

■ Next, the Department argues that the School District failed to take advantage of 7 C.F.R. § 210.18(q)(4), which provides that "[a]ny information on which the State agency's action was based shall be available to the appellant for inspection from the date of receipt of the request for review...." The Department acknowledges that the School District had a right to appeal directly under 7 C.F.R. § 210.18(q)(2), which provides: "The appellant may refute the action specified in the notice in person and by written documentation to the review official. In order to be considered, written documentation must be filed with the review official not later than 30 calendar days after the appellant received the notice." It is undisputed that the School District timely filed its appeal in writing, and the Department fails to cite to any provision of the regulations requiring the School District to inspect information in the Department's possession before appealing the fiscal action.

■ The School District, on the other hand, argues that the Department failed to make a timely request for recovery of the funds. Under the regulations, each school food authority must submit a monthly claim for reimbursement not later than 60 days following the last day of the full month covered by the claim. 7 C.F.R. § 210.8(b)(1). The state agency then may adjust the claim pursuant to 7 C.F.R. § 210.8(b)(4), which provides:

The State agency shall promptly take corrective action with respect to any Claim for Reimbursement which includes more than the number of lunches served, by type, to eligible children. In taking corrective action, State agencies may make adjustments on claims filed within the 60–day deadline *if such adjustments are completed within 90 days of the last day of the claim month* and are reflected in the final Report of School Program Operations (FNS–10) for the claim month.... (Emphasis added.)

Exit conferences were held in December 2003 and April 2004, respectively, at the conclusion of the first and second follow-up reviews. The Department did not seek to recover the funds until Soroka sent the December 3, 2004 letter to the School District, which stated that "[d]ue to critical area vacancies in Field Services in the Division of Food and Nutrition, your understanding in the timing of receipt of this information is appreciated." *See* Exhibit 2.

Had the Department made timely adjustments, it would not have needed to seek recovery of funds almost one year after the first follow-up review and exit conference. The Department has cited no authority for its contention that Section 210.8(b)(4) applies only to adjustments to be made to the School District's monthly claims and that the Department's recovery request is not subject to any time limitations. Accordingly, the Court concludes that the Department's request for recov-

---

4. Under Rule 602 of the Pennsylvania Rules of Evidence, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 applies to an agency proceeding in general. *See Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Prods.)*, 580 Pa. 470, 861 A.2d 938 (2004).

ery of funds is untimely under Section 210.8(b)(4).

In closing, the Court holds that the decision of the Hearing Officer must be reversed. First, the decision is not supported by substantial evidence in the record, and second, the Department's request for recovery of funds from the School District was untimely.[5]

## ORDER

AND NOW, this 27th day of June, 2006, the Court reverses the decision of the Hearing Officer of the Department of Education for the reasons discussed in the foregoing opinion.

---

**5.** The School District additionally argues that its right to due process was violated because the Hearing Officer was not properly appointed and was not an independent review official. The General Rules of Administrative Practice and Procedure provide that "[w]hen evidence is to be taken in a proceeding, either the agency head or, when designated for that purpose, one or more of its members, examiners or other representative appointed according to law, may preside at the hearing." 1 Pa.Code § 35.185. The federal regulations mandate that the appeal procedures adopted by the Department provide "a fair and impartial hearing before an independent official...." 7 C.F.R. § 210.18(q). The regulations further require that the review official be "an independent and impartial official other than, and not accountable to, any person authorized to make decisions that are subject to appeal...." 7 C.F.R. § 210.18(q)(5). As the Pennsylvania Supreme Court stated in *Lyness v. State Board of Medicine,* 529 Pa. 535, 547, n12, 605 A.2d 1204, 1210, n12 (1992), "[t]he right to a fair and impartial tribunal in the first instance is a cornerstone of our notion of due process." It is well settled that due process is required in all administrative hearings. *School District of Philadelphia v. Pennsylvania Milk Marketing Board,* 683 A.2d 972 (Pa.Cmwlth.1996). While the School District has raised significant arguments in this regard, the Court need not address those arguments because of its reversal of the Hearing Officer's decision on other grounds.